*855 OPINION OF THE COURT
Shirley Werner Kornreich, J.
Motion sequences 002 and 003 are hereby consolidated for disposition. This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with contract. Defendants Catholic Health East (CHE) and Merrill Lynch, Pierce, Fenner & Smith Inc. each move separately to dismiss the complaint. Plaintiffs oppose both motions and cross-move for partial summary judgment on the issue of breach of contract. Defendants oppose. The complaint is dismissed for lack of standing.
I. Background
This case involves three sets of tax-exempt municipal bonds (collectively, the bonds) issued between 1993 and 1996 to finance certain hospital systems in Florida, Georgia, and Pennsylvania (second amended complaint [SAC] 1Í1Í18-21). The bonds were issued by a governmental or quasi-governmental authority and paid interest at rates between 5.125% and 5.625% (id.). Each bond was governed by a bond indenture (the indentures) (id. If 23). The indentures appointed a trustee and vested it with certain powers and obligations related to the bonds and their management (id.). At the time of the events in question, the trustee was the Bank of New York Mellon Trust Company, N.A.
The indentures gave a bond’s issuer the right to redeem, or “call,” the bond prior to its stated maturity date (id. U 24). They also provided that in the event of a partial redemption, i.e., in the event the issuer decided to call less than all of the bonds, then the trustee would select the bonds to be redeemed “by lot,” that is, randomly (SAC If 24). On February 19, 1998, CHE, a not-for-profit health care system, entered into escrow agreements to defease each of the bonds, pursuant to which CHE irrevocably deposited securities backed by the United States Treasury into an escrow account in an amount sufficient to cover all payments of principal and interest up to and including the respective maturity dates for each of the bonds (id. If 25). The escrow agreements conferred upon CHE the right to call the bonds, subject to the other provisions of the indentures, including the restriction on partial redemptions (id.). Each indenture is governed by the law of the state of the issuer, i.e., Florida, Georgia or Pennsylvania (Schwed affirmation, exhibit A [Florida indenture], 1111.06 [a]; exhibit B [Georgia indenture], If 130; exhibit C [Pennsylvania indenture], 1113.6).
*856 On March 29, 2011, acting on the advice of Merrill, CHE sent letters to all holders of the bonds, stating that it would purchase any bonds tendered to it by April 26, 2011 for 101% of par value, plus accrued interest (id. 11 28; joint statement of material facts II 5). In the same letter, CHE announced that any bonds not tendered to it by April 26 would be redeemed on May 18, 2011, at 100% of par value, plus interest (SAC 1Í1Í 29-30; joint statement 11 9). CHE subsequently extended the tender offer period to May 3 (SAC 11 32). The trustee consummated the tender transactions; on May 18, approximately 34.3% of the bonds (including those owned by plaintiffs) were redeemed (id. 1111 33-34; joint statement H 14).
Plaintiff Emmet & Co., Inc. and the clients of plaintiff First Manhattan Co. held some of the bonds (SAC 1111 9-11, 18). Em-met and First Manhattan objected to the transaction, conveying their displeasure in letters to the trustee dated April 29 and May 3, respectively (Emmet aff, exhibit 19; Josephson aff, exhibits 1-3). Emmet then attempted to stop the transactions from going forward by seeking injunctive relief from this court on May 13, 2011, claiming that the transaction violated the indentures as the call constituted a partial redemption but the redeemed bonds had not been selected by lot (see complaint). CHE removed the case to federal court, where Emmet’s application was denied (Emmet & Co., Inc. v Catholic Health E., 2011 WL 2015533, 2011 US Dist LEXIS 54935 [SD NY, May 18, 2011, No. 11 Civ 3272(RMB), Berman, J.]). After the redemption, Em-met amended its complaint to include First Manhattan Co. as a plaintiff; plaintiffs then amended the complaint a second time to include Merrill as a defendant, alleging that Merrill had tortiously induced CHE to breach the indentures. The joinders of First Manhattan and Merrill destroyed diversity and deprived the federal court of subject matter jurisdiction; the case, therefore, was remanded to this court (Emmet & Co, Inc. v Catholic Health E., US Dist Ct, SD NY, 11 Civ 3272[RMB], Berman, J., Sept. 28, 2011).
II. Discussion
On a motion to dismiss, the court must accept as true the facts alleged in the complaint as well as all reasonable inferences that may be gleaned from those facts (Amaro v Gani Realty Corp., 60 AD3d 491 [1st Dept 2009]; Skillgames, LLC v Brody, 1 AD3d 247, 250 [1st Dept 2003], citing McGill v Parker, 179 AD2d 98, 105 [1992]; see also Cron v Hargro Fabrics, 91 *857 NY2d 362, 366 [1998]). The court is not permitted to assess the merits of the complaint or any of its factual allegations, but may only determine if, assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable cause of action (Skillgames, citing Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]).
Standing
Each of the indentures contains a “no-action” clause, which bars any bondholder from bringing suit to enforce the indenture unless certain conditions are met (Florida indenture H 7.09 [a]; Georgia indenture 1Í 805; Pennsylvania indenture 1Í 8.5). To have the right to institute suit, the trustee must have had notice of an event of default, the holders of at least 25% of outstanding principal must have demanded, in writing, that the trustee institute a suit in its own name, offering to indemnify it for taking such action, and the trustee must have refused to institute such a suit (Florida indenture 1i 7.09; Georgia indenture 1Í 805; Pennsylvania indenture 1i 8.5).
The parties do not dispute that no-action clauses are enforceable under the bonds’ respective applicable laws (Florida Nat. Bank of Jacksonville v Jefferson Std. Life Ins. Co., 123 Fla 525, 167 So 378 [1936]; Varner v Atlanta Laundries, Inc., 182 Ga 148, 184 SE 877 [1936]; Rittenhouse v Lukens Steel Co., 116 Pa Super 303, 176 A 543 [1935]). Defendants have moved to dismiss on the grounds that plaintiffs have failed to plead that they complied with the no-action clauses, and so lack standing to bring this suit at all (CHE’s mem of law in support at 10-11; Merrill’s mem of law in support at 8).
Plaintiffs do not contend that they complied with the clauses.* Rather, in opposition, they make two arguments. First, plaintiffs maintain that no-action clauses do not apply to wrongful redemption cases. Second, plaintiffs argue that the present suit falls under an express exception to the no-action clause found in each indenture. The Florida indenture states:
“Nothing contained herein shall affect or impair . . . the right of the Holder of any Bond (i) to receive payment of the principal of or interest on such Bond on or after the due date thereof or (ii) to institute suit for the enforcement of any such payment on or *858 after such due date” (Florida indenture 1i 7.09 [c]).
Using slightly different language, the Georgia and Pennsylvania indentures state:
“Nothing in this Article contained shall, however, affect or impair the right of any [bondholder], which is absolute and unconditional, to enforce the payment of the principal of and interest on such owner’s [bond] out of the moneys provided for such payment, or the obligation of [the issuer] to pay the same out of the sources pledged hereto, at the time and place expressed herein” (Georgia indenture 1i 805; Pennsylvania indenture 11 8.5).
Plaintiffs claim that they merely seek to enforce their right to the interest they would have been entitled to had the bonds not been called (plaintiffs’ mem at 18). As such, their suit is authorized under the above-mentioned exceptions to the no-action clauses.
It is well settled that “[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved” (Matter of Allstate Ins. Co. [Stolarz — New Jersey Mfrs. Ins. Co.], 81 NY2d 219, 223 [1993]). In the absence of a conflict, the laws of the forum state where the action is being tried — here, New York — should apply (Excess Ins. Co. v Factory Mut. Ins. Co., 2 AD3d 150, 151 [1st Dept 2003]). Neither the parties nor the court have found case law from Georgia, Florida or Pennsylvania on the issues here presented. Consequently, the court will apply New York law.
Plaintiffs, relying on Rossdeutscher v Viacom, Inc. (768 A2d 8 [Del 2001]) and Whitebox Convertible Arbitrage Partners, L.P. v World Airways, Inc. (2006 WL 358270, 2006 US Dist LEXIS 9730 [ND Ga, Feb. 15, 2006, No. 1:04-CV-1350-RLV]), decisions interpreting New York law issued by out of state courts (plaintiffs’ mem in opposition at 17; tr at 35-36), contend that no-action clauses do not apply to wrongful redemption cases. However, according to the courts of this state, a party cannot sue to assert its rights under an indenture while ignoring the indenture’s restriction on its ability to sue (Bank of N.Y. v Battery Park City Auth., 251 AD2d 211 [1st Dept 1998]; Continental Cas. Co. v State of N.Y. Mtge. Agency, 1998 WL 513054, 1998 US Dist LEXIS 12784 [SD NY, Aug. 5, 1998, No. 94 Civ 8408(KMW)]; see also In re Cendant Corp. Sec. Litig., 2005 WL 3500037, 2005 US Dist LEXIS 35549 [D NJ, Dec. 21, 2005, Nos. *859 98-CV-1664(WHW), 98-CV-0381, 98-CV-0759(WHW)]). Thus, the indentures’ no-action clauses apply to this lawsuit.
Nor is plaintiffs’ second argument persuasive. The First Department has held that in an action for interest stemming from a redemption, an “express authorization of actions for unpaid interest” is unavailing where plaintiffs are not seeking to recover “past due interest as such,” but rather the future interest payments (Bank of N.Y., 251 AD2d at 211). On the other hand, federal courts have held that, under New York law, in the absence of express language in the provision limiting it to “unpaid” interest, the exception also allows suits for interest that has not yet accrued (Continental Cas. Co., 1998 WL 513054, *4, 1998 US Dist LEXIS 12784, *12-16; In re Cendant Sec. Litig., 2005 WL 3500037, *10, 2005 US Dist LEXIS 35549, *41-43). Plaintiffs argue that the provisions in the indentures are not limited to “unpaid” interest and principal, and accordingly their right to sue is not so restricted (plaintiffs’ mem at 19).
Following, for argument’s sake, the federal courts’ interpretive method, the first step of our analysis ought to be an examination of the language of the provisions themselves. The Florida indenture preserves the bondholder’s right “to institute suit for the enforcement of any . . . payment [of interest or principal] on or after [the] due date [thereof]” (Florida indenture K 7.09 [c]). The modifying clause “on or after [the] due date [thereof]” would seem to expressly restrict the exception to suits for past due interest only. This reading is confirmed by the Continental Cas. court, which held up nearly identical language as an example of a clause where there was an “explicit exception from the no action clause for suits seeking payment of unpaid principal or interest” (Continental Cas. Co., 1998 WL 513054, *4, 1998 US Dist LEXIS 12784, *12-16, referring to Upic & Co. v Kinder-Care Learning Ctrs., Inc., 793 F Supp 448, 454-455 [SD NY 1992]). Then too, this is the usual interpretation given to section 316 (b) of the Trust Indenture Act from which this particular language derives (15 USC § 77ppp [b]; Great Plains Trust Co. v Union Pac. R.R. Co., 492 F3d 986, 991 [8th Cir 2007] [holding that “Section 316 grants (the bondholders) the absolute right to sue for unpaid interest”]; In re Envirodyne Indus., Inc., 174 BR 986, 993 [ND 111 1994] [holding that section 316 (b) “grants Noteholders the right to pursue an action for past due interest”]). Accordingly, both under New York law as applied by New York courts and as applied by the federal courts, the exception in the Florida indenture’s no-action clause *860 is limited to suits for past due, accrued interest, and precludes the instant action.
The interest exceptions found in the Georgia and Pennsylvania indentures are written differently, disavowing the indenture’s ability to affect a bondholder’s right “to enforce the payment of the principal of and interest on such owner’s [bond] . . . , or the obligation of [the issuer] to pay the same . . . , at the time and place expressed herein” (Georgia indenture 1Í 805; Pennsylvania indenture 1i 8.5). Here, the modifier “at the time and place expressed herein” could be read to also apply to the first proposition of the disjunctive clause, thereby limiting the preservation of the bondholder’s right to enforce payment to “the time and place expressed herein.” This would render this clause semantically indistinguishable from the interest exception found in the Florida indenture. As a strictly linguistic matter, however, it could be maintained that the modifier applies only to the last proposition, and only preserves the issuer’s obligation to pay interest “at the time and place expressed herein.”
It is true that in Continental Cas., the United States District Court found this very language to be lacking an express limitation on suits for unpaid interest, though it did not explain the basis for its interpretation (see Continental Cas. Co., 1998 WL 513054, *4, 1998 US Dist LEXIS 12784, *12-16). Nevertheless, we find this reading unpersuasive. For one thing, it would be strange to preserve a bondholder’s right to “enforce” a certain type of payment without similarly preserving the debtor’s obligation to make such a payment. Limiting the scope of the final modifier to apply only to the debtor’s obligation produces this somewhat odd, asymmetrical result. Moreover, policy considerations weigh against such a broad reading of the exception. Simply put, allowing lawsuits for unaccrued payment obligations would essentially allow all claims relating to the value of the bond, and would let the payment exception swallow the no-action clause (see tr at 38-39).
This is a problematic conclusion. Such clauses have become a “standard feature” of indenture agreements (RBC Capital Mkts., LLC v Education Loan Trust IV, 2011 WL 6152282, *5, 2011 Del Ch LEXIS 185, *14 [Dec. 6, 2011, No. 6297-CS] [applying New York law], quoting In re Cendant Sec. Litig., 2005 WL 3500037, *9, 2005 US Dist LEXIS 35549, *37). Barriers to action by individual bondholders serve an important purpose by both preventing expensive lawsuits that do not have the sup *861 port of a substantial portion of the creditors while also centralizing the prosecution of lawsuits whose benefits should properly accrue to all bondholders (RBC Capital Mkts., 2011 WL 6152282, *5, 2011 Del Ch LEXIS 185, *14-15; see also Florida Nat. Bank, 123 Fla at 539, 167 So at 384; Rittenhouse, 116 Pa Super at 310, 176 A at 546). As such, the interest exception must not be construed to render the no-action clause ineffective (Feder v Union Carbide Corp., 141 AD2d 799, 800 [2d Dept 1988]). At oral argument, plaintiffs urged the court to adopt a direct-versus-derivative distinction to limit the scope of the interest exception, a distinction supposedly employed by the Delaware Chancery Court in RBC (tr at 36-39). However, that distinction is a statement of policy, not a test. The test enunciated by RBC is that “[i]f a predicate to recovery is proving a breach of legal obligations . . . other than those directly addressing the payment of principal and interest,” then the no-action clause applies (RBC, 2011 WL 6152282, *6, *2, 2011 Del Ch LEXIS 185, *30, *5-6). The primary question in this case is whether or not CHE violated the indentures’ procedures governing partial redemptions, not whether the provisions regarding payment were complied with. The court, therefore, concludes that plaintiffs’ suit is subject to the no-action clauses. Plaintiffs’ failure to comply with those clauses’ terms deprives them of standing. Accordingly, it is ordered that the motions by defendants Catholic Health East and Merrill Lynch, Pierce, Fenner & Smith Inc. to dismiss the complaint is granted with costs to be taxed by the clerk upon presentation of an appropriate bill of costs, and the clerk is directed to enter judgment accordingly; and it is further ordered that plaintiffs’ cross motion for partial summary judgment is denied as moot.

 Among other deficiencies, plaintiffs never demanded that the trustee institute suit. Plaintiffs have failed to plead or otherwise present a reason for fading to make such a demand, such as a conflict of interest on the part of the trustee (see Velez v Weinstein, 87 AD2d 309, 315-316 [1st Dept 1982]).