RBC CAPITAL MARKETS, LLC, a Minnesota Limited Liability Company, Plaintiff Below, Appellant,

and

The Depository Trust Company and CEDE & Co., Nominal Plaintiffs Below, Appellants,

v.

EDUCATION LOAN TRUST IV, a Delaware Statutory Trust; and U.S. Education Loan Trust IV, LLC, a Delaware Limited Liability Corporation, Defendants Below, Appellees.

No. 343, 2013.

Supreme Court of Delaware.

Submitted: Dec. 11, 2013.
Decided: March 5, 2014.

Matthew E. Fischer, Jennifer C. Wasson, and Janine L. Hochberg, Esquires, Potter Anderson & Corroon LLP, Wilmington, Delaware; Of Counsel: Alan J. Stone, Esquire (argued), Milbank, Tweed, Hadley & McCloy LLP, New York, New York for Appellants.

Kurt F. Gwynne (argued), Brian M. Rostocki, and John C. Cordrey, Esquires, Reed Smith LLP, Wilmington, Delaware for Appellee Education Loan Trust IV.

Daniel B. Rath, Rebecca L. Butcher (argued), and K. Tyler O'Connell, Esquires, Landis Rath & Cobb LLP, Wilmington, Delaware for Appellee U.S. Education Loan Trust IV, LLC.

Before HOLLAND, JACOBS and RIDGELY, Justices.

JACOBS, Justice:

## I. INTRODUCTION

The plaintiff-below/appellant RBC Capital Markets, LLC ("RBC") appeals from a Superior Court judgment dismissing its claims against the defendants-below/appellees U.S. Education Loan Trust IV, LLC (the "Issuer") and Education Loan Trust IV (the "Trust"), (collectively, the "Defendants"). RBC sued the Defendants in the Court of Chancery in 2011. RBC's complaint alleged that the Defendants had been paying excessive fees from the Trust. The court dismissed the Chancery action as barred by the Trust Indenture's "no-action" clause.

Thereafter, in 2012, RBC commenced the underlying Superior Court action, claiming that the Defendants had unlawfully failed to pay interest owed to RBC under the Issuer notes that RBC held. The Superior Court dismissed that complaint on two grounds: (1) that the complaint failed to state a claim upon which relief can be granted, and (2) that the earlier Court of Chancery judgment of dismissal precluded RBC's claim as *res judicata*. RBC appealed to this Court.

We conclude, for the reasons next discussed, that the Superior Court erroneously dismissed the action. We hold that RBC's complaint satisfies Delaware's "reasonable conceivability" pleading standard, that the claim is not barred by the Trust Indenture's no-action clause, and that on the current record it cannot be determined as a matter of law that RBC's Superior Court claim is precluded as *res judicata*.[1] Therefore, we reverse and remand the case to the Superior Court.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Facts [2]

RBC is a Minnesota limited liability company with its principal place of business in New York. The Issuer is a Delaware limited liability company. RBC beneficially owns over $450 million of the Issuer's auction rate securities (the "Notes"). The Notes were issued under an Indenture of Trust dated March 1, 2006 (the "Indenture") and amendments thereto, and were collateralized by student (FFELP) loans owned by the Trust, which is a Delaware statutory trust.[3] The amendments to the Indenture include Supplemental Indentures dated March 1, 2006 and September 1, 2006 (together, the "Supplemental Indentures").[4] The Bank of New York ("BNY") is the designated Indenture Trustee.[5]

Under the Supplemental Indentures, the Notes pay interest at a variable rate fixed by periodic Dutch auctions, usually every 28 days.[6] In the event of a failed auction

---

1. In addition, we hold that insofar as RBC's claim alleges breaches that arose after the Court of Chancery complaint was filed, the claim is not barred as *res judicata*.

2. The facts are drawn from the Amended Complaint and its exhibits.

3. A Trust Certificate granted the Issuer a 100% beneficial ownership interest in the loans owned by the Trust.

4. The Indenture and Supplemental Indentures are governed by New York law. LIBOR-indexed notes were also issued pursuant

to the Indenture, but are not at issue on this appeal.

5. Although it is not a named party, BNY has participated in this litigation as Indenture Trustee.

6. In a Dutch auction, existing noteholders and potential investors bid for the notes, specifying at what interest rate they would be willing to purchase the notes for par value. The auction procedures are set forth in Section 2.02 of Schedule A of each Supplemental Indenture.

(*e.g.*, where there are insufficient bids to purchase all the Notes being auctioned), the Notes must pay interest at the lesser of the Net Loan Rate and the Maximum Rate for the relevant period.[7] Since February 2008, the Dutch auctions for the Notes have failed.

The Indenture also limits how and under what circumstances a noteholder may bring an action to enforce claims arising under the Indenture. Section 6.08 of the Indenture—the "no-action" clause—provides that:

> [N]o Holder of any Note or Other Beneficiary shall have any right to institute any suit, action or proceeding in equity or at law for the enforcement of this Indenture or for the execution of any trust hereof or for the appointment of a receiver or any other remedy hereunder unless [certain conditions are satisfied].

Section 6.09 carves out an exception to Section 6.08—namely, that "the Holder of any Note shall have the right, which is absolute and unconditional, to receive payment of the principal of, premium, if any, and interest on such Note . . . and, upon the occurrence of an Event of Default with respect thereto, to institute suit for the enforcement of any such payment. . . ."[8]

In May 2010, the Issuer ceased paying interest on the Notes.

### B. The Court of Chancery Action

On March 18, 2011, RBC brought an action in the Court of Chancery against the Issuer and the Trust. The crux of RBC's complaint (the "Chancery Complaint") was that the Trust had paid excessive fees to the Issuer and its affiliates in violation of the Indenture, and thereby improperly reduced the amount of interest lawfully owed to RBC and other noteholders. Count One of the Chancery Complaint prayed for an accounting "to determine whether the Trust is being properly administered and to determine what interest is owed to RBC . . . as a result of the [excessive fees]." Count Two claimed that the Defendants had been unjustly enriched by the payment of excessive fees and the resulting reduction in the calculated interest rate. Count Three alleged that the Defendants breached the Indenture and Supplemental Indentures by paying excessive fees and miscalculating the Net Loan Rate. Those breaches, RBC claimed, constituted an Event of Default under Section 6.01 of the Indenture. For relief, RBC sought, *inter alia*, the payment of interest due after Defendants disgorge all adjudicated excessive fees.

On December 6, 2011, the Court of Chancery dismissed RBC's complaint for failure to state a claim upon which relief may be granted.[9] The court determined that, although RBC had attempted to

---

7. The Maximum Rate, which is an annual rate, defined as the least of: (a) LIBOR plus 1.5% or 2.5%, depending on the rating assigned to the Notes by rating agencies; (b) a formula based on commercial paper rates; (c) 18%; and (d) the highest rate the issuer may legally pay. The Net Loan Rate is an annual rate, defined as equal to: (a) the sum of all interest payments and Special Allowance Payments made with respect to Financed FFELP Loans during the preceding calendar quarter, *less* (b) all consolidation loan rebate fees, Note Fees, Servicing Fees and Administration Fees during the preceding calendar quarter, *divided by* (c) the average daily principal balance of Financed FFELP Loans for the preceding calendar quarter.

8. Because Section 6.09 applies only to a Holder, which the Indenture defines as the person in whose name the Note is registered, the Holder of RBC's Notes—the Depository Trust Company ("DTC") and Cede & Co.—are nominal plaintiffs in this action.

9. *RBC Capital Markets, LLC v. Educ. Loan Trust IV*, 2011 WL 6152282, at *3, *7 (Del.Ch. Dec. 6, 2011).

package its claim as one for unpaid interest, the claim "depend[ed] in the first instance on and [was] derivative of a claim belonging to the Trust itself." [10] The reason (the court held) was that "[t]he violations alleged by RBC [the payment of excessive fees] did not affect the occurrence of interest payments, but rather directly injured the Trust itself and therefore indirectly affected an input to the calculation of the interest rate." [11] Applying New York law, the court reasoned that "[i]f a predicate to recovery is proving a breach of legal obligations under a trust indenture other than those directly addressing the payment of principal and interest, the proper course of action is to apply the requirements of the no-action clause to those claims." [12] Accordingly, Section 6.09 of the Indenture (the exception to the no-action clause) did not apply to RBC's claim. [13] Because RBC should have-but did not-plead compliance with the no-action clause, the court dismissed RBC's Chancery Complaint. [14]

RBC did not appeal from the Court of Chancery judgment of dismissal, which is now final.

### C. The Superior Court Action

On February 1, 2012, RBC filed the underlying Superior Court action against the Defendants. The Superior Court complaint contained two counts, the first alleging breach of contract, and the second alleging breach of the implied covenant of good faith and fair dealing. On August 20, 2012, after oral argument on Defendants' motions to dismiss, RBC filed an amended complaint (the "Amended Complaint"), that added DTC and Cede & Co. as nominal plaintiffs and withdrew the initial claim for breach of the implied covenant of good faith and fair dealing.

The Amended Complaint alleges that the Defendants breached the Indenture and Supplemental Indentures by failing to pay interest lawfully owed to RBC since May 2010. Applying the relevant formula to information contained in quarterly investor reports and trustee statements, RBC claims that for the period May 1, 2011 through April 30, 2012, the Defendants owe RBC $920,689 in interest. For the period May 2010 through April 30, 2011, RBC estimates that the Defendants owe RBC additional interest in an unspecified amount. [15]

On May 31, 2013, the Superior Court dismissed the Amended Complaint for failure to state a claim upon which relief may be granted, and also because the claim was barred as *res judicata*. [16] Regarding the Rule 12(b)(6) dismissal, the trial court concluded that the Amended Complaint did not "establish [that] interest exists to which RBC is entitled." [17] Moreover (the court held), because "the Net Loan Rate equation undeniably involves management decisions . . . a challenge to those decisions

10. *Id.* at *5.

11. *Id.*

12. *Id.* at *6.

13. *Id.* at *5, *7.

14. *Id.* at *7.

15. The Amended Complaint states, "[a]pplying the Net Loan Rate and Maximum Rate formula to these cash flows shows that interest should have been paid. Given that substantial net cash flow is coming into the Trust each month, interest clearly is due and owing." *Am. Complaint* ¶ 56(A93).

16. *RBC Capital Markets, LLC v. Educ. Loan Trust IV*, 2013 WL 3355726, at *8 (Del.Super.Ct. May 31, 2013).

17. *Id.* at *7.

is a derivative claim subject to the Indenture's 'no-action clause.' "[18]

The court also determined that the requirements for the application of *res judicata* were satisfied.[19] Specifically, the Court of Chancery dismissal constituted a final judgment,[20] and the Superior Court claim for unpaid interest was identical to the dismissed Court of Chancery claim. As the trial court stated:

> RBC is basing its "interest" claim on the same mismanagement allegations upon which it sought an accounting in the Court of Chancery. RBC is not saying that under the formula for calculating interest there is money owing. RBC is, yet again, accusing Defendants of having acted in a way, whatever way that was, that left no interest money available under the formula.[21]

Even if RBC's present claim for interest were grounded on a different theory than the claim it asserted in the Court of Chancery (the court continued), both claims arose out of the same transaction—the Indenture and the Defendants' course of conduct.[22] Because RBC knew or should have known of its current claim for unpaid interest when it filed its Chancery Complaint, RBC's Superior Court claim was the "same" as its Court of Chancery claim for *res judicata* purposes.[23] Lastly, the trial court held that Defendants' failure to pay interest did not constitute a "continu-

ing breach" that would enable RBC to avoid the *res judicata* bar.[24]

RBC timely appealed to this Court from the dismissal of its Superior Court complaint.

## III. THE PARTIES' CONTENTIONS AND THE STANDARD OF REVIEW

### A. The Contentions

On appeal, RBC claims that the Superior Court erred by dismissing the action, because the Amended Complaint (1) states a legally cognizable claim that (2) is not barred as *res judicata*. In support of its first claim of error, RBC advances two arguments. First, RBC contends that the Amended Complaint pleads facts sufficient to support a claim that Defendants breached their contractual obligation to pay interest owed to RBC. In concluding otherwise, RBC urges, the Superior Court improperly applied a heightened pleading standard. Second, because the claim for unpaid interest falls squarely within the exception carved out by Section 6.09 of the Indenture, the Superior Court erroneously dismissed RBC's claim as barred by the Indenture's no-action clause.

In support of its second claim of error, RBC advances four arguments. First, RBC urges that because the Court of Chancery dismissed the Chancery Complaint for lack of standing rather than on

---

18. *Id.*

19. "The *res judicata* bar operates when: '(1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and, (5) the decree in the prior action was a final decree.' " *Id.* at *5 (quoting *La-*

*Point v. AmerisourceBergen Corp.,* 970 A.2d 185, 192 (Del.2009)).

20. *Id.* at *7.

21. *Id.* at *5.

22. *Id.*

23. *Id.* at *5–6.

24. *Id.* at *7.

the merits, the dismissal did not constitute a "final judgment" for *res judicata* purposes. Second, RBC argues that its Superior Court claim for unpaid interest is not identical to its earlier Chancery claim challenging Defendants' payment of excessive fees, because the two claims arise out of distinct sets of operative facts. Third, and alternatively, RBC contends that even if the two claims arise from the same operative facts, RBC did not know (nor could it have known) of its claim for unpaid interest when it commenced its Chancery action. Fourth, RBC argues that even if all the *res judicata* requirements are satisfied, that doctrine does not bar that segment of RBC's claim alleging breaches that occurred after its Chancery Complaint was filed.

The Defendants vigorously contest all four of these claims of error.

## B. The Issues and the Standard of Review

RBC's first claim of error raises two issues: (1) does the Amended Complaint satisfy Delaware's liberal notice pleading standard, and (2) if it does, is RBC's claim for interest nonetheless barred by the Indenture's no-action clause? RBC's second claim of error raises three issues: First, did the dismissal of the Chancery Complaint constitute a final judgment for purposes of *res judicata*? Second, is RBC's present claim for unpaid interest the same as the claim RBC alleged in its Chancery Complaint? Third, if the first two questions are answered affirmatively, did the Defendants' failure to pay interest owed to RBC for the period after the Chancery

Complaint was filed generate a new, separate claim not barred by *res judicata*?

■■■ This Court reviews a trial court's grant of a motion to dismiss *de novo*.[25] "When reviewing a ruling on a motion to dismiss, we (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) do not affirm a dismissal unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[26] A trial court determination that a claim is barred as *res judicata* raises a legal question that we review *de novo*.[27]

## IV. ANALYSIS

### A. Dismissal for Failure to State a Claim

Having carefully reviewed the record, we conclude that the Superior Court erred in holding that the Amended Complaint failed to state a cognizable claim for relief. We determine that it is reasonably conceivable that RBC has stated a claim for interest due under Section 6.09 of the Indenture, which is not barred by the no-action clause contained in Section 6.08.

### 1. The Amended Complaint States a Claim for Breach of Contract

■■ RBC's Amended Complaint alleges that, applying the relevant rate formulas, interest was due to RBC, which Defendants failed to pay for the period May 2010 through April 2012. Accordingly (RBC urges), the pled facts make it reasonably

25. *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC,* 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.,* 812 A.2d 894, 896 (Del.2002)).

26. *Id.* (citing *Savor,* 812 A.2d at 896–97).

27. *See Betts v. Townsends, Inc.,* 765 A.2d 531, 533 (Del.2000).

conceivable that RBC is entitled to relief. We agree. The Indenture is governed by New York law, under which the "essential elements to pleading a breach of contract . . . are the making of an agreement, performance by the plaintiff, breach by the defendant, and damages suffered by the plaintiff." [28] Here, the parties contest only whether the Amended Complaint adequately alleges that interest was actually due and owing to RBC under the Indenture, which Defendants failed to pay.

The Amended Complaint avers that if an auction fails, the Notes bear interest at a rate equal to either the Net Loan Rate or the Maximum Rate.[29] The Amended Complaint also alleges that "[f]or each period [from May 1, 2011 through April 30, 2012] RBC *applied* the lower of the Maximum Rate and the Net Loan Rate. . . . [and] has determined that from [May 1, 2011] through [April 30, 2012], [the Issuer] should have paid RBC $920,689 in interest under the terms of the Indenture and Supplemental Indentures." [30] For the period May 2010 through April 30, 2011, the Amended Complaint alleges that while "RBC lacks information to replicate this detailed analysis for the periodic interest payments due [for that period]. . . . its analysis of the information which is available demonstrates that RBC is owed similar amounts of interest for [that period]." [31]

It is difficult to imagine how RBC could plead more clearly that interest is actually owed under the terms of the Indenture. Although the Amended Complaint's allegations relating to the period May 2010 through April 30, 2011 are less precise than those that concern the period May 1, 2011 through April 30, 2012, those allegations permit the reasonable inference that, irrespective of any claimed mismanagement, interest is owed. The Amended Complaint states that the Net Loan Rate is based on "a formula that is directly tied to the cash flows of the underlying student loan collateral," [32] and that the "actual cash flows into and out of the Trust demonstrate that net cash has come into the Trust [which holds the underlying collateral] which in turn should have resulted in interest payments being made to" noteholders.[33] By labeling this claim as a challenge to the Defendants' mismanagement of the trust, and by holding that the Amended Complaint failed adequately to allege that interest was owed to RBC under the Indenture and Supplemental Indentures, the Superior Court erred.

## 2. The No–Action Clause Does Not Bar the Claim

We next address whether RBC's claim, even though legally cognizable, is nonetheless barred by the Indenture's no-action clause. The Superior Court concluded that it was, because "the Net Loan Rate equation undeniably involves management decisions." We disagree. No-action clauses are a "standard feature of indenture agreements [and] require compliance by bondholders to prevent dismissal of their suit." [34] But even so, where, as

---

**28.** *Startech, Inc. v. VSA Arts*, 126 F.Supp.2d 234, 236 (S.D.N.Y.2000).

**29.** *See* n. 8, *supra* for the definition of those terms. Defendants do not contest this characterization of the interest obligations under the Indenture and Supplemental Indentures.

**30.** Am. Complaint ¶¶ 30–31 (emphasis added) (A84).

**31.** *Id.* ¶ 33(A85).

**32.** *Id.* ¶ 15(A79).

**33.** *Id.* ¶ 34(A86).

**34.** *In re Cendant Corp.*, 2005 WL 3500037, at *9 (D.N.J. Dec. 21, 2005) (citing *Rossdeutscher v. Viacom*, 768 A.2d 8, 22 (Del.2001)).

here, the noteholder advances a claim directly challenging a default in a required payment of principal or interest, the no-action clause does not apply.[35] Section 6.09 of the Indenture explicitly allows a noteholder to bring an action to recover unpaid principal or interest (after a missed payment is deemed to constitute an Event of Default) without first complying with the no-action clause. Only where "a predicate to recovery [of unpaid interest or principal] is proving a breach of legal obligations under a trust indenture other than those directly addressing the payment of principal and interest" will a noteholder's claim for principal or interest be subject to the no-action clause.[36] That is not this case.

RBC's Amended Complaint claims that interest is owed but remains unpaid. Specifically, RBC alleges that "interest is owed to RBC based on the actual cash flows into and out of the Trust regardless of whether the outflows, including fees, were authorized."[37] As RBC's counsel explained to the Superior Court during oral argument: "if the formula is properly applied, would we be entitled to interest. If [so], we want our interest." During oral argument before this Court, RBC represented that it would not challenge the propriety of any fees paid by the Trust to prove its (RBC's) Superior Court claim for interest.[38] Contrary to what the Superior

Court determined, RBC's claim does not depend upon successfully challenging any management decisions (*i.e.*, proving a breach of a legal obligation under the Indenture other than the obligation to pay principal or interest). RBC seeks only to recover the interest due under the interest payment terms of the Indenture, whatever may have been the fees that the Trust paid. Because we conclude that that claim falls within the purview of Section 6.09 of the Indenture, it is not barred by the no-action clause.

### 3. The Defendants' Contrary Arguments

The Defendants advance two arguments to support their position that the Amended Complaint fails to state a claim and is barred by the no-action clause. Neither has merit.

The Defendants first contend that the source documents RBC used for its interest calculations contradict and negate RBC's position that its claim is only for interest due under the Indenture. Defendants insist that (1) those documents contain no information about the income the Trust received—information that is needed to calculate the applicable interest rate, and (ii) the documents show that the expenses the Trust actually paid affirmatively establish that no interest is due. Those documents compel the conclusion (Defen-

---

**35.** *See, e.g., Cruden v. Bank of New York,* 957 F.2d 961, 968 (2d Cir.1992) ("Notwithstanding the 'no action' clause, the debenture holders have an absolute right to institute suit *after* nonpayment of principal or interest....."). The "absolute and unconditional" right of a noteholder to pursue unpaid principal or interest is a requirement of § 316 of the Trust Indenture Act, 15 U.S.C. § 77ppp(b). *See McMahan & Co. v. Wherehouse Entm't, Inc.,* 65 F.3d 1044, 1050 n. 4 (2d Cir.1995); *Upic & Co. v. Kinder-Care Learning Ctrs., Inc.,* 793 F.Supp. 448, 452 (S.D.N.Y.1992).

**36.** *RBC,* 2011 WL 6152282, at *6; *see also Emmet & Co., Inc. v. Catholic Health E.,* 37 Misc.3d 854, 951 N.Y.S.2d 846, 851–52 (N.Y.Sup.Ct.2012) (applying the "test" enunciated by the Court of Chancery).

**37.** Am. Complaint ¶ 73(A97).

**38.** We hold RBC to that representation. Whatever its initial intentions may have been, RBC may not later challenge the fees paid out of the Trust as a predicate to proving its interest claim.

dants say) that the Amended Complaint fails to state a claim upon which relief may be granted.[39]

We are unpersuaded by this argument. As RBC points out, the "source documents" to which the Defendants refer are not claimed to be all the documents RBC used to calculate the amount of interest due. Nor do the documents upon which Defendants rely "effectively negate" the pivotal allegations in the Amended Complaint. Those referenced documents are extensive—they include approximately 200 pages of financial statements—yet nowhere have the Defendants identified a specific line item or other provision that contradicts RBC's claim that interest is due. In essence, what Defendants ask this Court to do is analyze 200 pages of statements, together with a summary that Defendants have prepared. To perform that exercise would require us to wade through the evidence and engage in fact-finding, merely to decide whether or not RBC's allegations are contradicted. That is not an exercise which this Court or any court should be required to undertake in reviewing a grant of a motion to dismiss.

Defendants next argue that RBC was required to (but did not) specify precisely how it calculated the interest allegedly due, in order to establish that its claim falls within Section 6.09 of the Indenture. More specifically, the Defendants insist that RBC must establish in its complaint that it did not manipulate or cap the fee inputs in calculating the Net Loan Rate. In effect, Defendants contend that the Indenture's no-action clause creates a particular-

ized factual pleading standard that RBC must satisfy to properly allege a claim for interest due.

That argument is misguided. On review of a motion to dismiss, this Court "accept[s] all well pleaded factual allegations as true, [and] accept[s] even vague allegations as "well pleaded" if they give the opposing party notice of the claim...."[40] Here, the Amended Complaint specifically alleges that "interest is owed to RBC based on the actual cash flows into and out of the Trust regardless of whether the outflows, including fees, were authorized." RBC's counsel bound his client by representing to this Court that, in proving that claim, RBC would not challenge the propriety of any fees paid out of the Trust. Finally, Defendants cite no authority to support its contention that, to survive a motion to dismiss, a noteholder seeking to avoid a no-action clause must satisfy a heightened pleading standard requiring the noteholder to plead evidence establishing that its claim is not barred by the no-action clause.

RBC's claim is not based on a challenge of management decisions. Rather, it is a straightforward claim to recover unpaid interest owed, for which RBC was not required affirmatively to plead compliance with the no-action clause.

### B. Res Judicata

Having determined that the Amended Complaint states a legally cognizable claim that interest was due but unpaid and that the claim is not barred by

---

**39.** *See Malpiede v. Townson,* 780 A.2d 1075, 1083 (Del.2001) ("[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."); *Transdigm Inc. v. Alcoa Global Fasteners, Inc.,* 2013 WL 2326881, at *4 (Del.Ch. May 29, 2013) ("[A] complaint may, despite allegations to

the contrary, be dismissed where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations.").

**40.** *Cent. Mortg. Co.,* 27 A.3d at 535 (citing *Savor,* 812 A.2d at 896–97).

the no-action clause, we reach the final issue: is RBC's claim is barred by the doctrine of res judicata? In Delaware, res judicata operates to preclude a later-filed claim where:

(1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree.[41]

RBC concedes that elements 1, 2, and 4 are satisfied. Accordingly, the issues reduce to elements 3 and 5, *i.e.*, whether: (i) the Court of Chancery Judgment was a final decree, and (ii) the cause of action asserted in the Court of Chancery was the "same" as that later asserted in the Superior Court. We conclude that the answer to the first question is yes. Regarding the second issue, we find that the current record does not permit a determination, as a matter of law, that RBC's Superior Court claim is the "same" as its previously dismissed Chancery claim. Although RBC's Chancery claim and its current claim arose

out of the same transaction, it is not possible to determine, on this record, whether RBC knew or could have known of that claim, such that RBC could have asserted the claim in its Chancery Complaint. What we can (and do) conclude is that, to the extent that RBC's claim arises from Defendants' failure to pay interest *after* the Chancery Complaint was filed, that portion of its claim is not barred as *res judicata*.

### 1. The Court of Chancery Dismissal Was a Final Judgment

 The Superior Court correctly determined that the Court of Chancery order dismissing the Chancery Complaint was a final judgment. In general, a dismissal with prejudice constitutes a final decree for *res judicata* purposes.[42] Here, the Court of Chancery dismissed the Chancery Complaint under Court of Chancery Rule 12(b)(6).[43] The effect of such a dismissal is informed by Court of Chancery Rule 15(aaa), which provides that where a party does not amend its complaint in response to a Rule 12(b)(6) motion to dismiss, a later dismissal of the complaint under Rule 12(b)(6) "shall be with prejudice."[44] It is also informed by

---

**41.** *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 192 (Del.2009) (quoting *Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1092 (Del.2006)).

**42.** *See Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del.2006) ("[T]he phrase "without prejudice" will mean only that the otherwise final judgment does not operate as a *res judicata* bar to preclude a subsequent lawsuit on the same cause of action."); *Kaufman v. Nisky*, 2011 WL 7062500, at *1 (Del.Super.Ct. Dec. 20, 2011) ("In Delaware, a dismissal with prejudice is considered an adjudication on the merits. When an action has been dismissed on its merits, the *res judicata* doctrine forecloses a losing party from reasserting for a second time the same cause of action against the same party."); *Savage v. Himes*, 2010 WL

2006573, at *3 (Del.Super.Ct. May 18, 2010) *aff'd*, 9 A.3d 476 (Del.2010) ("A dismissal 'with prejudice' is [an] adjudication 'on the merits' and *res judicata* forecloses a losing party from asserting an adjudicated claim against the same party."); *Levinhar v. MDG Med., Inc.*, 2009 WL 4263211, at *7 (Del.Ch. Nov. 24, 2009) ("And the fifth element is satisfied because this court's order dismissing the Section 225 Action with prejudice is a final judgment for *res judicata* purposes.").

**43.** *RBC*, 2011 WL 6152282, at *3, *7.

**44.** Cт. Cн. R. 15(aaa). The rule states in relevant part: "In the event a party fails to timely file an amended complaint or motion to amend under this subsection (aaa) and the

Court of Chancery Rule 41(b), which governs involuntary dismissals. Rule 41(b) provides that except for dismissals for lack of jurisdiction or for improper venue or for failure to join a party under Rule 19, a Rule 41(b) dismissal (or any dismissal not provided for in Rule 41) "operates as an adjudication upon the merits," unless the court specifies otherwise.[45] The Court of Chancery dismissal, therefore, constituted a final judgment.

RBC contends, nonetheless, that because the Court of Chancery judgment addressed only RBC's standing to bring suit, that judgment was not a "final" decree on the merits for *res judicata* pur-

poses. Ordinarily, a dismissal for lack of subject matter jurisdiction or for lack of standing will not operate as a final decree that bars later claims.[46] But here, the Chancery Complaint was dismissed under Court of Chancery Rule 12(b)(6) for failure to state a claim—not for lack of standing.[47] Court of Chancery Rule 41(b) authorizes an involuntary dismissal where a plaintiff has failed to "comply with these Rules or any order of court. . . ." Rule 41(b) further provides that "a dismissal under this paragraph and any dismissal not provided for in this Rule, other than a dismissal for lack of jurisdiction or for improper venue, or for failure to join a party under Rule 19,

---

Court thereafter concludes that the complaint should be dismissed under Rule 12(b)(6) ... such dismissal shall be with prejudice ... unless the Court, for good cause shown, shall find that dismissal with prejudice would not be just under all the circumstances." Notably, the Issuer's motion to dismiss in the Court of Chancery specified that the claims should be dismissed with prejudice.

**45.** CT. CH. R. 41(b). That rule states in its entirety:

*Involuntary dismissal; effect thereof.* For failure of the plaintiff to prosecute or to comply with these Rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. After the plaintiff has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The Court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. Unless the Court in its order for dismissal otherwise specifies, a dismissal under this paragraph and any dismissal not provided for in this Rule, other than a dismissal for lack of jurisdiction or for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

**46.** *See Smith v. Guest,* 16 A.3d 920, 934–35 (Del.2011) (holding that an earlier lawsuit dismissed for lack of standing could not operate to preclude petitioner's later-filed suit); *Elder v. El Di, Inc.,* 1997 WL 364049, at *7 (Del.Super.Ct. Apr. 24, 1997) ("[T]he defendants ignore the fact that the order of dismissal was based on a lack of subject matter jurisdiction and under Delaware law, lack of subject matter jurisdiction is a question of justiciability not involving an adjudication on the merits."); *see also Stuart Kingston, Inc. v. Robinson,* 596 A.2d 1378, 1382 (Del.1991) ("The concept of 'standing,' in its procedural sense, refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or redress a grievance.").

**47.** *See Appriva S'holder Litig. Co., LLC v. EV3, Inc.,* 937 A.2d 1275, 1280 (Del.2007) ("[W]e hold that where the issue of standing is related to the merits, a motion to dismiss is properly considered under Rule 12(b)(6) rather than 12(b)(1)."); *see also Feldbaum v. McCrory Corp.,* 1992 WL 119095 (Del.Ch. June 2, 1992) (dismissing claims barred by a no-action clause for failure to state a claim upon which relief can be granted); *McMahan & Co. v. Wherehouse Entm't, Inc.,* 859 F.Supp. 743, 749 (S.D.N.Y.1994) *aff'd in part, rev'd in part on other grounds,* 65 F.3d 1044 (2d Cir.1995) *cert. denied,* 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 781 (1996) (holding that a no-action clause defense constitutes a defense for failure to state a claim upon which relief can be granted).

*operates as an adjudication upon the merits.*"[48]

### 2. The Record Does Not Disclose Whether RBC Knew or Could Have Known of Its Claim for Unpaid Interest

RBC claims that the Superior Court erred by concluding that RBC's Superior Court claim was identical (for *res judicata* purposes) to RBC's Court of Chancery claim. We agree, because on the current record no such determination can be made as a matter of law. We do not foreclose the possibility that on remand the Superior Court could find, on an expanded record, that RBC's Superior Court claim (to the extent it arose before the Chancery Complaint was filed) is identical to RBC's earlier Court of Chancery claim.

■ In determining whether two claims constitute the "same" cause of action for *res judicata* purposes, Delaware follows a transactional approach.[49] "The modern transactional view of the doctrine of res judicata ... permits the doctrine to be invoked to bar litigation between the same parties if the claims in the later litigation arose from the same transaction that formed the basis of the prior adjudication."[50] "The procedural 'bar of *res judicata* extends to all issues which might have been raised and decided in the first suit as well as to all issues that actually were decided.'"[51] But, although a contract that is the subject of sequential claims is regarded as a single transaction for *res judicata* purposes,[52] that is not invariably true. A subsequent breach of contract claim will not be treated as identical to an earlier contract claim (and therefore *res judicata* will not operate as a bar) where the facts underlying the later claim were either unknown or incapable of being known at the time of the earlier action.[53]

■ Here, both RBC's current claim and its earlier Court of Chancery claim arose out of the same contractual instruments—the Indenture and Supplemental Indentures. The Court of Chancery claim (that excessive fees were paid out of the Trust) arose out of an alleged violation of Section 7 of the Supplemental Indentures. RBC's current claim (for unpaid interest owed to RBC) arose out of an alleged breach of the interest payment terms of

---

48. Ct. Ch. R. 41(b) (emphasis added). RBC also cites non-Delaware authority for the proposition that a dismissal for failure to satisfy a precondition to suit will not preclude a subsequent action. *See Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 511 Fed.Appx. 54, 55 (2d Cir.2013) ("The Tribunal's decision *not* to consider Faiveley['s] damages on the merits is not res judicata to their claims here because '[i]n ordinary circumstances a second action on the same claim is not precluded by dismissal of a first action for prematurity or failure to satisfy a precondition to suit.'") (quoting 18A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 4437 (2d ed.2012)). RBC, however, fails to cite any Delaware authority holding that a dismissal "on the merits" under Delaware court rules—and based on a failure to comply with a no-action clause—should not have preclusive effect on later actions.

49. *LaPoint*, 970 A.2d at 193.

50. *Maldonado v. Flynn*, 417 A.2d 378, 381 (Del.Ch.1980) (citing *Ezzes v. Ackerman*, 234 A.2d 444 (Del.1967); *Levinhar*, 2009 WL 4263211, at *10).

51. *LaPoint*, 970 A.2d at 191–92 (quoting *Cassidy v. Cassidy*, 689 A.2d 1182, 1185 (Del. 1997)) (explaining that the purpose of the doctrine is to "prevent a multiplicity of needless litigation of issues by limiting parties to one fair trial of an issue or cause of action which has been raised or should have been raised in a court of competent jurisdiction").

52. *LaPoint*, 970 A.2d at 194.

53. *Id.* at 193; *Aveta Inc. v. Bengoa*, 986 A.2d 1166, 1185 (Del.Ch.2009).

the Indenture and Supplemental Indentures, constituting an Event of Default under Section 6.01(a).[54]

What the existing record does not disclose is whether RBC knew, or could have known, of its current claim for interest, owed but unpaid, at the time of the Court of Chancery litigation. RBC argues that only after the Defendants had failed to pay interest for a "sustained period" was RBC put on notice that the nonpayment was due not to market conditions, but to a breach of the interest payment terms of the Indenture and Supplemental Indentures. Specifically, RBC claims that "it was not until well after briefing had been completed on Appellees' motion to dismiss the Chancery Action that RBC was able to possess the data and analysis that allowed it to confirm that Appellees were wrongfully withholding interest payments in violation of the Indenture provisions governing the payment of interest."[55]

Defendants point to various items of extrinsic evidence, including a letter from RBC to the Issuer dated October 30, 2009, that (Defendants say) show that in fact RBC knew of its claim for unpaid interest when it commenced its Chancery action.[56] RBC responds that that record does not show that. Rather, the evidence shows only that RBC did *not* have access to the information needed to discover its claim.

It is clear, if only from the parties' need to resort to extrinsic evidence, that any determination of what RBC knew or could have known at the time of the Chancery litigation requires a factual inquiry that is inappropriate at this procedural stage. At some later stage the Superior Court might determine that RBC knew or could have known of its claim for unpaid interest (dating back to May 2010) when RBC litigated in the Court of Chancery. But no such determination is possible on this appeal.

### a. Breaches That Occurred After the Chancery Complaint Was Filed

■ The final issue is whether that portion of RBC's claim that relates to Defendants' nonpayment of interest due after the Chancery Complaint was filed, is barred by *res judicata*, even if RBC knew or could have known of its claim for unpaid interest when it filed its Chancery litigation. We conclude that such a claim would not be barred.

■ The *res judicata* doctrine operates to bar only later claims that could have been brought at the time of an earlier asserted claim.[57] Accordingly, "[c]ontractual rights that are triggered and pursued *after* the initial action is filed … are not barred by *res judicata* because a prior judgment 'cannot be given the effect of

---

**54.** RBC points out that the two claims relate to different time periods. The Chancery Complaint alleged breaches that took place in 2008 and 2009, while the Amended Complaint alleges breaches in 2010 through 2012. This fact is not dispositive, however, if RBC knew of its claim for unpaid interest (beginning in May 2010) at the time it filed suit in the Court of Chancery (in March 2011). Accordingly, the critical inquiry is whether RBC knew, or could have known, of its claim for unpaid interest at the time of the litigation in the Court of Chancery.

**55.** Appellant's Op. Br. at 27–28.

**56.** *See LaPoint,* 970 A.2d at 193–94 ("[T]he defendant must show that the plaintiff 'neglected or failed to assert claims which in fairness should have been asserted in the first action.' "). The Defendants also point to a letter sent to a Court of Chancery during the Chancery litigation that "RBC would still be entitled to bring suit for non-payment of interest even if the payment of excessive fees did not directly impact the amount of interest it was owed."

**57.** *See* notes 60, 62, *supra.*

extinguishing claims which did not even then exist.'"[58]

Under the Supplemental Indentures, interest on the Notes must be paid the "first Business Day following the end of each Auction Period for interest accrued through the end of such Auction Period."[59] An Auction Period (a contractually defined term) is 28 days, unless modified pursuant to other terms specified in the Supplemental Indentures. Essentially, the Supplemental Indentures created a separate recurring obligation (each 28 day period) to pay interest on the Notes. A failure to pay interest due for one period will not automatically give rise to a cause of action for failures in future periods, even if noteholder suspects that the Issuer may commit similar contract breaches in the future. Here, RBC could not have known in March 2011 (when it filed its Chancery action) that it would have an enforceable claim for Defendants' breach of their contractual duty to pay interest that would fall due in later periods. The facts underlying any such later claims had not yet materialized.[60] Therefore, the Court of Chancery judgment does not preclude that portion of RBC's claim arising from breaches that occurred after the Chancery Complaint was filed.[61]

The Defendants argue that even the portion of RBC's claim arising from breaches that occurred after the Chancery Complaint was filed is barred by *res judicata,* because the alleged misconduct relates back to events that occurred at the time the Chancery litigation was commenced. That theory fails to take into account that the Indenture and Supplemental Indentures created separate, recurring obligations. At the end of each Auction Period, the Defendants must decide whether or not to pay accrued interest to noteholders. Only on each occasion where Defendants do not pay interest that is owed will a discrete breach occur.

## V. CONCLUSION

For the foregoing reasons, the Superior Court judgment dismissing the complaint is reversed and the case is remanded to the Superior Court for further proceedings in accordance with this Opinion. Jurisdiction is not retained.

58. *LaPoint,* 970 A.2d at 194.

59. Supplemental Indentures, Schedule A, § 1.01 ("Interest Payment Date" Definition) (A252).

60. The Superior Court acknowledged as much in its Opinion: "Of course, if the investments start earning interest and Defendants start refusing to pay, or withhold payments ... then RBC may file a new lawsuit." *RBC,* 2013 WL 3355726, at *7.

61. *See* 47 Am.Jur.2d Judgments § 477 ("[A]pplying the rule that a subsequent action can be brought on a cause of action that accrues at a different time, a final determination of an action ... under an installment contract does not preclude a later action based on defaults in payments of installments due after the judgment in the prior action."); *see also Dover Historical Soc'y, Inc.,* 902 A.2d at 1092 ("In our view, the bar of *res judicata* was improperly applied. The second fee application rested entirely upon facts that did not arise until after the first application had been denied.").