COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

January 29, 2016

Richard P. Rollo, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Kurt M. Heyman, Esquire
Proctor Heyman Enerio LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801

Re: *Knoll Capital Management L.P. v. Advaxis, Inc.*
C.A. No. 11417-VCN
Date Submitted: January 11, 2016

Dear Counsel:

In November 2014, Plaintiff Knoll Capital Management L.P. ("KCM") and Defendant Advaxis, Inc. ("Advaxis") orally agreed, or so it is alleged, that KCM would purchase more than 1.66 million shares of unregistered Advaxis common stock for $3 per share. Even though KCM was already an Advaxis shareholder, Advaxis found a preferable acquirer of the shares and refused to complete its transaction with KCM. Instead, on December 19, 2014, it issued Advaxis stock to another group at a price of $4.25 per share. Because of a non-disclosure agreement that KCM had signed in reliance upon an Advaxis commitment that its transaction

would be consummated, KCM was not able to buy Advaxis's publicly traded stock. By late June 2015, shares of Advaxis stock were trading for more than $30 per share. KCM seeks to compel Advaxis to complete the transaction or an award of damages caused by its failure to do so.

Advaxis has moved to dismiss the First Amended Verified Complaint (the "Complaint") under Court of Chancery Rule 12(b)(6). It contends that the agreement, if there in fact was an agreement, was never memorialized by a writing and that its board of directors never approved the issuance of Advaxis stock to KCM. Its motion, of course, may only be granted if, from the proper allegations of the Complaint (including documents properly incorporated), it is not "reasonably conceivable" that it could prevail.[1]

Advaxis has framed a disarmingly straightforward issue: may $5 million (or more than 1.6 million shares) of stock of a Delaware corporation be sold orally without a written agreement to convey the stock or a board resolution approving

---

[1] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

the sale?[2]  It starts its analysis by invoking *Grimes v. Alteon, Inc.* which teaches that the "Delaware General Corporation Law requires board approval and a written instrument evidencing an agreement obligating the corporation to issue stock either unconditionally or conditionally."[3]  KCM, however, has alleged "[o]n information and belief, [that] the Advaxis board of directors authorized [its Chief Executive Officer] to enter into the Agreement, or ratified the Agreement."[4]  This allegation, meager as it is and approaching conclusory as it does, is factual in nature and provides notice to Advaxis as anticipated by Court of Chancery Rule 8(a).[5]  How this happened, when it happened, and maybe where it happened would have been helpful information, but the pleading with particularity requirements of Court of Chancery Rule 9(b) do not apply to KCM's claims.  Whether KCM will be able to prove this allegation is not known at this stage.  The contention that Advaxis's

---

[2] *See* Def. Advaxis, Inc.'s Reply Br. in Supp. of its Mot. to Dismiss First Am. Verified Compl. 1.
[3] 804 A.2d 256, 266 (Del. 2002).
[4] Compl. ¶ 18.  The "Agreement" is defined as "a November 17, 2014 agreement for the sale of 1,666,666.67 shares of Advaxis unregistered common stock to KCM at a price of $3 per share, for a total purchase price of $5 million."  Compl. introductory paragraph.
[5] *RBC Capital Mkts., LLC v. Educ. Loan Trust IV*, 87 A.3d 632, 639 (Del. 2014).

board approved the sale alleviates the need, for the moment at least, to consider KCM's arguments that the Advaxis board had a pattern of authorizing its Chief Executive Officer to make such deals on his own but with the understanding that the board would support or approve them as necessary, or more specifically, that the board viewed an agreement as final when this Chief Executive Officer made his commitment.

Next, the Court must consider whether a failure to satisfy the *Grimes* requirement of a writing can be treated as a defective corporate act that could be cured under 8 *Del. C.* § 205 ("Section 205").[6] For example, the Court "may . . . [d]etermine the validity of any corporate act or transaction and any stock, rights or options to acquire stock."[7] As a result, the Court "may . . . [v]alidate and declare effective any defective corporate act."[8] A "defective corporate act" includes "any act or transaction purportedly taken by or on behalf of the corporation that is, and at the time such act or transaction was purportedly taken would have been, within the power of a corporation . . . but is void or voidable due to a failure of

---

[6] Advaxis has not challenged KCM's standing to pursue a claim under Section 205.
[7] 8 *Del. C.* § 205(a)(4).
[8] *Id.* § 205(b)(2).

authorization."[9]  Here, Advaxis's Chief Executive Officer undertook on behalf of Advaxis a transaction to issue and sell to KCM common stock of Advaxis; at the time, had it been done properly, Advaxis could have issued that stock.  Advaxis claims that the transaction is ineffective—whether void or voidable does not matter in this instance—"due to a failure of authorization."  Again, the board did not authorize, or so Advaxis claims, the issuance and sale of shares to KCM.  Furthermore, "failure of authorization" includes "the failure to authorize or effect an act or transaction in compliance with the provisions of this title," or the "failure of the board of directors . . . to authorize or approve any act or transaction taken by or on behalf of the corporation that would have required for its due authorization the approval of the board of directors."[10]  As set forth, Advaxis's argument against being bound by the alleged agreement with KCM turns on a failure of authorization.  As pled, KCM's claim conceivably falls within Section 205 and the two definitions—defective corporate act and failure of authorization—that are drawn from 8 *Del. C.* § 204.

---

[9] *Id.* § 204(h)(1).
[10] *Id.* § 204(h)(2).

Thus, the question becomes: whether the Court may validate the defective contract for the sale of stock and require Advaxis to comply with its terms. If the board, as alleged in paragraph 18 of the Complaint, authorized the sale of stock, the question becomes less difficult. However, even if the board did not authorize the sale of stock, the defective corporate act arguably falls within the remedial scope of Section 205.

The recent legislation empowering the Court to validate ineffective (void or voidable) corporate acts is broad in scope. Advaxis has not explained why a failure to satisfy *Grimes* should not be treated as any other failure to comply with the DGCL or governing common law.

Perhaps as a matter of discretion, the Court would not, in effect, order the consummation of an oral agreement for the sale of corporate stock. Because of the breadth of discretion accorded the Court, motions to dismiss in this context may be problematic. For instance, Advaxis points to one instance where a board's long-term acknowledgement of (or acquiescence in) a stock issuance was given significant weight in determining that a defective corporate act reflected the

board's intentions and understanding.[11]  Here, the Advaxis board rejected the notion of a KCM transaction no more than a few days after it was allegedly made. By Section 205(d)(2), the Court, in deciding whether to validate a defective corporate act, "may consider . . . [w]hether the corporation and board of directors has treated the defective corporate act as a valid act or transaction."  Thus, the decision to consider how the corporation treated the defective corporate act over time is committed to the Court's discretion.  Long-term acknowledgement of the act is not a statutory requirement.  Accordingly, the prompt turnaround (if that is what happened) in corporate thinking about the KCM transaction may be a pertinent consideration, but it is not necessarily determinative and offers Advaxis no comfort in the context of its motion to dismiss.

In sum, the Complaint alleges a defective corporate act and Advaxis has not demonstrated that it is not reasonably conceivable that KCM could obtain the relief

---

[11] *See In re Numoda Corp.*, 2015 WL 6437252, at *3 (Del. Oct. 22, 2015).

which it seeks under Section 205.[12]  Accordingly, Advaxis's motion to dismiss is

denied.[13]

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:    Register in Chancery-K

---

[12] KCM sponsors other theories supporting its claim to a right to purchase the Advaxis shares.  Those contentions tend to coalesce into a mix of equitable factors that might inform the Court's exercise of discretion under Section 205, even if the factors are not outcome determinative on their own.  Moreover, those theories, if KCM is successful in its Section 205 efforts, would be enhanced and KCM might be entitled to recovery under several different theories.  As pled, KCM's other theories may not be dependent upon relief under Section 205, but they become viable, even if ultimately unnecessary, following success under Section 205.

Advaxis may be frustrated because the Court must accept the well-pled (even if barely) allegations made by KCM.  The key component of a Section 205 analysis involves the discretion of the Court, and, in the context of a motion to dismiss, the Court not only takes the facts as alleged in the Complaint, but it also, on these facts, cannot conclude how it would exercise its discretion after assessing the facts.  If it is reasonably conceivable that the exercise of discretion would lead to a balancing in Plaintiff's favor, the motion to dismiss fails.  It appears that KCM's factual pathway to the relief it seeks may be narrow and that there are at least some factors that might induce an exercise of discretion in favor of Advaxis.  Nonetheless, the standard for a motion to dismiss is not whether the plaintiff may have a rocky road ahead.

[13] With this conclusion, the stay of discovery, entered on October 12, 2015, is vacated.