## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ELUTIONS CAPITAL VENTURES )
S.A.R.L., NBL FUND I, LP and )
HASHMINE LLC, )
        )
        Plaintiffs, )
     v. )
        )
JOHN BETTS, )     C.A. No. 2020-0455-NAC
        )
        Defendant, )
        )
and )
        )
NOBLE TALENTS, LLC, )
        )
        Nominal Defendant. )

## ORDER DENYING DEFENDANTS' APPLICATION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

1. Plaintiffs are preferred members of Nominal Defendant Noble Talents, LLC (the "Company"). Defendant John Betts founded the Company and served as its CEO. Plaintiffs allege that Betts breached his fiduciary duties during the Company's sale process and interfered with and ultimately thwarted a potential deal.

2. Betts has embarked on a campaign of scorched-earth litigation that has been delaying the case and taxing judicial and party resources. This has included 61 non-party subpoenas, six motions for commission, a motion for judgment on the pleadings, a motion to dismiss, a motion for reargument, and most relevant here, three requests for leave to amend or add counterclaims.

3. In their latest effort to prevent the case from advancing beyond the pleading stage, Defendants[1] have applied for certification of an interlocutory appeal (the "Application").[2] Defendants seek review of my October 24, 2022, oral decision granting them leave to amend their answer and denying their third attempt to amend and add counterclaims (the "Order").[3] Plaintiffs oppose the Application.[4]

4. The Application quotes from the wrong transcript, mischaracterizes the Order's scope and reasoning, and asserts grounds for appellate review that were not raised previously. The Order did not decide a substantial issue of material importance and none of the certification factors would support immediate appeal anyway. The Application, if granted, would reward Defendants' over the top conduct and freeze this two-year-old case at the pleading stage. So I will deny it.

---

[1] Betts's counsel also acts as Company counsel and has filed papers indicating that the Company, although named as a Nominal Defendant, joins Betts in defending the case. So I refer to them together where apt. When asked about this unusual posture, Betts's counsel stated that the Company is insolvent and has no source of funds to engage separate counsel.

[2] *See* Dkt. 131 (Defs.' Appl. for Certification of Interlocutory Appeal) (cited as "Appl.").

[3] *See* Ex. 1 to *id.* (Tr. of Oral Ruling Granting in Part and Den. in Part Defs.' Mot. to Amend Ans. and to Add Countercls.) (cited as "Order").

[4] *See* Dkt. 132 (Pls.' Opp'n to Appl.).

## FACTUAL BACKGROUND

5.      On March 30, 2021, Betts answered the complaint, raised defenses, and brought four counterclaims.[5] Then he served over five dozen subpoenas.[6] Some of those subpoenas were served in June 2021 (the "June Subpoenas"). The documents yielded by the June Subpoenas allegedly were not produced until the first week of October 2021 (the "October Records").

6.      Plaintiffs moved under Rule 12(b)(6) to dismiss Betts's counterclaims. Before the June Subpoenas returned, Betts opposed the motion. Betts alternatively requested dismissal without prejudice. The request was unelaborated; it did not raise the possibility that the June Subpoenas might uncover supportive evidence.[7]

7.      On November 8, 2021, the Court heard argument on Plaintiffs' motion to dismiss.[8] Betts did not discuss the October Records at the hearing.

---

[5] *See* Dkt. 30 (Ans. and Verified Countercls.).

[6] *See* Dkt. 127 (Notice of Service of Defs.' Third-Party Subpoena Accounting); *see also* Dkt. 122 ¶ 2 (Order Granting in Part and Den. in Part Pls.' Mot. for Protective Order).

[7] *See* Dkt. 53 at 48 (Def.'s Combined Br. in Opp'n to Pls.' Mot. to Dismiss and in Supp. of Def.'s Mot. to Dismiss and Mot. for J. on Pleadings).

[8] *See* Dkt. 72 (Hr'g Tr.). The Court also heard argument on Betts's motion to dismiss and motion for judgment on the pleadings. *Id.*

8.    On February 2, 2022, the Court dismissed all Betts's counterclaims with prejudice.[9]  At no point between November and February did Betts alert the Court to the October Records.

9.    Betts moved for reargument five days later.[10]  He also renewed his request for leave to amend.  As support for leave, Betts averred elliptically that he had received information from conversations with Company insiders that could support his counterclaims.[11]  Again, he did not reference the October Records.

10.    The Court denied reargument.[12]  Citing Court of Chancery Rule 15(aaa), the Court also denied Betts's second request for leave to amend.[13]

11.    Undeterred, Defendants tried once more.  On July 1, 2022, they moved to amend their answer and to add six counterclaims (the "Motion").[14]  Two of the proposed counterclaims were concededly dismissed back in February.[15]  The four

---

[9] *See* Dkt. 76 (Tr. of Oral Ruling Den. Def.'s Mot. to Dismiss and Mot. for J. on Pleadings and Granting Pls.' Mot. to Dismiss).  The Court also denied Betts's motions.  *Id.*

[10] *See* Dkt. 77 (Def.'s Mot. for Rearg.).

[11] *See id.* ¶ 35.

[12] *See* Dkt. 80 (Order Den. Def.'s Mot. for Rearg.).

[13] *See id.*

[14] *See* Dkt. 94 (Defs.' Mot. to Amend Ans. and to Add Countercls.) (cited as the "Motion").
[15] *See id.* ¶ 32.

remaining counterclaims repackaged Betts's dismissed allegations by adding words like "conspiracy" and splitting his former theories into separate counts.[16]

12. As support for their unabashed attempt to circumvent Rule 15(aaa) and the Court's rulings, Defendants cited the October Records. The Motion was the first time Defendants ever mentioned the October Records. At that point, Defendants possessed the October Records for nine months.

13. Defendants contended that the October Records contained "new evidence" to support their counterclaims. But Defendants did not identify anything "new" or material in the October Records. They still have not.[17]

14. On October 7, 2022, I heard oral argument on the Motion.[18]

15. I issued the Order on October 24, 2022.

16. As to the concededly dismissed counterclaims, the Order held that Defendants did not demonstrate a "compelling reason" within the meaning of settled precedent to vacate the prior dismissals with prejudice.[19] The Order explained that

---

[16] *See id.* ¶¶ 26–41; *compare* App. 1 to *id.* ¶¶ 103–18, 126–37 (Proposed Countercls.), *with* Dkt. 30 ¶¶ 55–76 (Verified Countercls.).

[17] *See, e.g.*, Appl. ¶ 2 (generally referencing "newly-discovered evidence" without explaining whether or in what ways the October Records contained or led to discovery of information unknown or unsuspected at the time of the original counterclaims).

[18] *See* Ex. 2 to Appl. (Tr. of Oral Arg. on, *inter alia*, the Motion).

[19] *See* Order at 8–10.

this result was fact-specific and based on Defendants' failure to articulate the significance of the October Records or to introduce them at any time during the nine months that preceded the Motion.

17. As to the "new" counterclaims, the Order held that Rule 15(aaa) barred Defendants from recasting dismissed allegations in the guise of renamed counts.[20]

18. The Application followed. The Application omits the procedural history recited above. It misleadingly quotes from the October 7 oral argument transcript as if it were the Order.[21] And it deploys hyperbolic rhetoric in an effort to portray a straightforward procedural decision as a catastrophe that will imperil the future of Delaware corporate law.[22] This approach enables Defendants to sidestep the Order's reasoning, raise arguments that were not presented in the Motion, and misattribute to the Order legal conclusions that are nowhere to be found.

---

[20] *See id.* at 11–15. The Order therefore did not reach the parties' Rule 15(a) arguments.

[21] *See, e.g.*, Appl. ¶ 30.

[22] *See, e.g.*, *id.* ¶ 10 ("The Order serves to erode public faith . . . and causes upheaval in the defense bar."); *id.* ¶ 44 ("Moreover, the Order threatens irreparable harm to litigants . . . . If Delaware Courts [*sic*] will not protect the ability of plaintiffs and defendants to have equal opportunity to prepare and amend claims in fiduciary duty cases, potential corporate defendants will have an incentive to use the laws of other states . . . to protect their interests."); *id.* ¶ 44 [*sic*] ("If the Order stands, any future defendants in [*sic*] a fiduciary duty claim will face an impossible decision . . . .").

19.     Even so, the Application fails.  The Order did not decide a substantial issue of material importance.  And none of the certification factors Defendants invoke would outweigh the costs that interlocutory appeal would impose.

**LEGAL ANALYSIS**

20.     Supreme Court Rule 42 governs certification of interlocutory appeals. "The purpose of Rule 42 is to prevent wasteful piecemeal litigation from overwhelming the docket of the Supreme Court."[23]  As a result, Rule 42 "is not an appropriate vehicle for re-litigating unsuccessful arguments preserved for . . . direct appeal."[24]  "Otherwise, interlocutory review would be appropriate in every case in which a losing party contends the Court committed legal error."[25]

21.     Interlocutory appeals are "generally not favored."[26]  They "disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[27]  So a Rule 42 application cannot be certified unless it clears

---

[23] *In re Del. Pub. Schs. Litig.*, 2022 WL 1220075, at *9 (Del. Ch. Apr. 26, 2022) (alteration and internal quotation marks omitted), *appeal refused*, 277 A.3d 296 (Del. 2022) (TABLE).

[24] *Northrop Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*, 2021 WL 772312, at *2 (Del. Super. Mar. 1, 2021), *appeal refused sub nom.*, *Nat'l Union Fire Ins. Co. v. Northrop Grumman Innovation Sys., Inc.*, 248 A.3d 922 (Del. 2021) (TABLE).

[25] *Legion P'rs Asset Mgmt., LLC v. Underwriters at Lloyds London*, 2020 WL 6875211, at *3 (Del. Super. Nov. 23, 2020), *appeal refused*, 242 A.3d 601 (Del. 2020) (TABLE).

[26] Supr. Ct. R. 42 cmt.

[27] Supr. Ct. R. 42(b)(ii).

two "rigorous" hurdles.[28]  First, the order must have "decide[d] a substantial issue of material importance that merits appellate review before a final judgment."[29] Second, there must be "substantial benefits" to granting the application that "will outweigh the certain costs that accompany an interlocutory appeal."[30]

**The Substantial Issue Requirement**

22.     "The 'substantial issue' requirement is met when an interlocutory order decides a main question of law which relates to the merits of the case, and not to collateral matters."[31] The Order does not meet the substantial issue requirement.

23.     A decision granting or denying leave to amend is not part of a merits determination.[32]  It is collateral to a merits determination.  In the Rule 15(aaa) context, denial of leave to amend or re-add a previously dismissed claim is collateral to a merits determination on the claim that was made in the motion to dismiss.

---

[28] *TowerHill Wealth Mgmt., LLC v. Bander Fam. P'ship, L.P.*, 2008 WL 4615865, at *2 (Del. Ch. Oct. 9, 2008), *appeal refused*, 962 A.2d 256 (Del. 2008) (TABLE).

[29] Supr. Ct. R. 42(b)(i).

[30] Supr. Ct. R. 42(b)(ii).

[31] *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008), *appeal refused*, 956 A.2d 31 (Del. 2008) (TABLE); *accord* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 18.04[d], at 18-15 (2d ed. & Dec. 2020 Supp.) ("Only a ruling by the Court of Chancery on the merits of the controversy is likely to meet the requirements of Rule 42.").

[32] *See, e.g.*, *Phillips v. State*, 282 A.2d 618, 618 (Del. 1971); *AluminumSource, LLC v. LLFlex, LLC*, 2021 WL 2416563, at *3 (Del. Super. June 24, 2021), *appeal refused*, 254 A.3d 397 (Del. 2021) (TABLE); *Brown v. Wilm. Zoning Bd.*, 2007 WL 2122046, at *2 (Del. Super. July 23, 2007), *appeal refused*, 947 A.2d 1120 (Del. 2007) (TABLE).

24.     A decision holding otherwise would endorse immediate appeals from any adverse outcome on a Rule 12(b)(6) motion that does not result in a final judgment.[33]   That type of appellate springboard would undermine the purpose of Rule 15(aaa) and Rule 42.  Rule 15(aaa) is designed to curb *seriatim* motions to amend.[34]   Rule 42 is designed to avoid "fragmentation" of cases into multiple appeals.[35]   Together, both Rules are designed to conserve litigant and judicial resources.  Granting the Application would do the opposite.

25.     "Interlocutory appeals should be exceptional, not routine . . . ."[36]  The Delaware Supreme Court reserves interlocutory review for "extraordinary" cases.[37] This is not one of them.   Accordingly, I would deny the Application on the substantial issue requirement alone.

---

[33] *See US Dominion, Inc. v. Fox News Network, LLC*, 2022 WL 100820, at *4 (Del. Super. Jan. 10, 2022) (identifying analogous concern about non-final pleading-stage motion decisions and denying certification), *appeal refused*, 270 A.3d 273 (Del. 2022) (TABLE).

[34] *See, e.g.*, *Braddock v. Zimmerman*, 906 A.2d 776, 783 (Del. 2006); *La. Mun. Police Emps.' Ret. Sys. v. Pyott*, 46 A.3d 313, 334 (Del. Ch. 2012), *rev'd on other grounds*, 74 A.3d 612 (Del. 2013); *Stern v. LF Cap. P'rs, LLC*, 820 A.2d 1143, 1146 (Del. Ch. 2003).

[35] *Castaldo v. Pittsburgh-Des Moines Steel Co.*, 301 A.2d 87, 87 (Del. 1973).

[36] Supr. Ct. R. 42(b)(ii).

[37] *Ryan v. Gifford*, 2008 WL 43699, at *4 (Del. Ch. Jan. 2, 2008) (internal quotation marks omitted).

**The Multi-Factor Balancing**

26.     The Order did not address a substantial issue of material importance. Even if it did, that would not necessarily mean that the Order "merits appellate review before a final judgment."[38]  If the substantial issue requirement is met, the Court next must consider whether the benefits of interlocutory review would outweigh its costs.  Rule 42(b)(iii) specifies eight factors to guide this assessment.[39]

27.     Having devoted the bulk of their energy to mischaracterizing the Order, Defendants give little attention to the Rule 42 factors.  On the last full page of the Application, Defendants list three factors as supporting certification.[40]  None does.

28.     Defendants first invoke Rule 42(b)(iii)(A).  This factor considers whether the Order resolved a novel question of law for the first time in Delaware.  It did not.  The Order applied settled Rule 15(aaa) precedent to a tattered procedural history involving parties who repeatedly tried to revive counterclaims that were dismissed with prejudice.  "The mere application of long-held precedent to new facts

---

[38] Supr. Ct. R. 42(b)(i).

[39] *See* Supr. Ct. R. 42(b)(iii)(A)–(H).

[40] *See* Appl. ¶¶ 45–47.  By selecting only three of eight factors, Defendants concede that the remaining five do not support certification.  *See, e.g.*, *In re Carvana Co. S'holders Litig.*, 2022 WL 4661841, at *2 (Del. Ch. Oct. 3, 2022), *appeal refused sub nom.*, *Garcia v. Franchi*, 2022 WL 11121788 (Del. Oct. 19, 2022) (TABLE).  So I do not discuss those.

does not make an order worthy of [interlocutory] appeal."[41]  Accordingly, Rule 42(b)(iii)(A) does not support certification.

29.  Defendants next invoke Rule 42(b)(iii)(B).  This factor considers whether the Order conflicts with other trial court decisions.  It does not.  The Order applied settled law to reach a result that is consistent with decisions of this Court.

30.  To create a conflict, Defendants suggest that the Order overlooked *Sciabacucchi v. Malone*.[42]  It did not.  The Order analyzed *Sciabacucchi* and explained why it was distinguishable.[43]  The Order's analysis tracks Rule 15(aaa) decisions rebuffing efforts to restyle dismissed claims as new counts.[44]  Defendants' disagreement with the Order's reasoning is not a basis for interlocutory review.

31.  Facing an absence of conflicting trial court decisions, Defendants pivot to an appellate decision, *RBC Capital Markets, LLC v. Education Loan Trust IV*,[45] and Court of Chancery Rule 13.  But Defendants did not argue either one in the Motion.[46]  And a party cannot on appeal "attack[] a judgment on a theory [that the

---

[41] *In re Carvana Co. S'holders Litig.*, 2022 WL 4661841, at *3 (quoting *Ryan*, 2008 WL 43699, at *6).

[42] 2021 WL 3662394 (Del. Ch. Aug. 18, 2021).

[43] *See* Order at 18–19.

[44] *See In re USG Corp. S'holder Litig.*, 2021 WL 930620, at *2–3 (Del. Ch. Mar. 11, 2021).

[45] 87 A.3d 632 (Del. 2014).

[46] Much like they did in the Motion, it appears that Defendants recognized "better" arguments after their initial arguments were rejected.  *See* Order at 11:20–23 (observing,

11

party] failed to advance before the trial judge."[47]  Accordingly, neither *RBC Capital* nor Rule 13 supplies a valid basis for interlocutory appeal.

32.     The Order does not conflict with *RBC Capital* or Rule 13 anyway.

33.     *RBC Capital* is not a Rule 15(aaa) decision.  In *RBC Capital*, the Delaware Supreme Court considered whether contract claims brought in the Superior Court were barred under *res judicata* when this Court previously dismissed claims arising from the same agreement.  In examining the elements of *res judicata*, the Supreme Court observed that dismissals with prejudice operate as final judgments.[48]  On the case's facts, Rule 15(aaa) required dismissal with prejudice. So the Supreme Court found that this Court's decision was a final judgment.[49]  That conclusion is the only place where *RBC Capital* references Rule 15(aaa).

34.     In Defendants' view, *RBC Capital* held that Rule 15(aaa) does not apply "where the underlying evidence needed for the party to 'discover its claim' was not available until briefing began."[50]  Defendants misread *RBC Capital*.

---

as to the "new" counterclaims, that "[D]efendants appear to have used [the Court's dismissal] rulings as a roadmap for correcting the deficiencies in their original counterclaims.").  This guess-and-test method is a recurring theme in Defendants' filings.

[47] *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665, 678 (Del. 2013) (internal quotation marks omitted); *see* Supr. Ct. R. 8 (precluding parties from raising new arguments on appeal).

[48] *See RBC Cap.*, 87 A.3d at 643.

[49] *See id.*

[50] Appl. ¶ 9 (quoting *id.* at 646).

35. The "discover its claim" language stems from a separate part of the *RBC Capital* decision. *RBC Capital* used that language when considering whether, under *res judicata*, the appellant brought the "same claim" in the Superior Court that the appellant brought in this Court.[51] The Superior Court claims involved unpaid interest on a loan. The unpaid interest did not accrue until after the Court of Chancery action was dismissed. The Supreme Court thus held that *res judicata* would not "preclude [the] portion of [the appellant's] claim arising from breaches [of the interest provisions] that occurred after" the Court of Chancery action was dismissed.[52] In other words, given the structure of the loan, the appellant may not have "discover[ed] its claims" until after the Court of Chancery action was over.[53]

36. *RBC Capital* is a *res judicata* decision that addresses a situation where a party brings claims in one court that are similar to claims that were dismissed by another court. *RBC Capital* does not address a situation where a party tries to reassert claims in one case that were dismissed earlier in the same case. Rule 15(aaa) addresses that situation.

---

[51] *See RBC Cap.*, 87 A.3d at 645–46.

[52] *Id.* at 647.

[53] *See id.* at 646–47.

13

37.     Defendants know that.  Plaintiffs—not Defendants—cited *RBC Capital* in their briefing on the Motion.[54]  Defendants correctly replied that *res judicata* would be irrelevant to my analysis:

> Plaintiffs' Opposition hinges on the argument that *res judicata* applies . . . . It is axiomatic that *res judicata* applies to successive litigations, not within the same case. The true question here is whether Rule 15(aaa) or Rule 15(a) applies to the new counterclaims.[55]

Indeed, counsel for Defendants reemphasized this point during oral argument:

> In the opposition, [Plaintiffs] say[] . . . that *res judicata* applies.  As we mentioned in our reply, *res judicata* applies to successive litigations [not] within a single litigation.  There's a mechanism built into the Chancery's rules.  That's Rule 15(a) and Rule 15(aaa).[56]

It is too late now to change course.  The Order does not conflict with *RBC Capital*.

38.     To propose a different conflict, Defendants offer Rule 13.  They say that the Order violates Rule 13 because the Order "stated that any claims that arise from the same transaction or occurrence cannot be repleaded."[57]  It did not.  In fact, the phrase "same transaction or occurrence" does not appear anywhere in the Order.

---

[54] *See* Dkt. 107 ¶ 6 & n.20 (Pls.' Opp'n to the Motion).

[55] Dkt. 113 ¶¶ 1–2 (Defs.' Reply in Supp. of the Motion).

[56] Ex. 2 to Appl. at 4:17–23 (Tr. of Oral Arg. on, *inter alia*, the Motion).

[57] Appl. ¶ 7; *see* Appl. ¶¶ 30–31 (blending Rule 13(a) and (e) and asserting the same).

39.     Defendants, of course, could not find this language in the Order.  So they instead quote from the October 7 oral argument transcript.[58]  Worse, they cite the Order *as if it were the source of the quote*.[59]  That is disappointing.

40.     Aside from their misrepresentations, Defendants urge that the Order misconstrued Rule 15(aaa) because Rule 13, not Rule 15, governs the procedure for amending counterclaims.  As observed, this argument was not raised in the Motion.[60]  Even so, this argument is meritless.  As a matter of hornbook law, Rule 15 applies equally to requests for leave to amend claims and counterclaims.[61]  Otherwise, counterclaimants would be exempt from Rule 15(aaa).  Now that would frustrate "the settled expectations of parties who have incorporated under Delaware law expecting equal procedural protections."[62]

---

[58] *See id.* ¶ 30.  Adding insult to injury, Defendants' quote does not contain the phrase "same transaction or occurrence" either.

[59] *See id.* (misattributing quote to "Ex. 1," *i.e.*, the Order).

[60] If anything, Defendants' new argument contradicts the Motion.  *See* Motion ¶¶ 28–29 ("This Court has previously held that Rule 15(a) . . . applies to motions for leave to amend [*sic*] to add claims . . . .  Under Rule 15(a)'s liberal pleading standard, this Court should grant . . . leave to add [the 'new'] [c]ounterclaims.").

[61] *See* Charles Alan Wright & Arthur R. Miller, 6 *Federal Practice and Procedure* §§ 1430, 1475, 1479, Westlaw (3d ed. database) (last updated Apr. 2022); *cf. Charter Commc'ns Operating, LLC v. Optymyze, LLC*, 2021 WL 1811627, at *20 (Del. Ch. Jan. 4, 2021) ("This case does not implicate Rule 15(aaa) for the simple reason that [counterclaim plaintiff] has not sought to amend its counterclaims.").

[62] Appl. ¶ 43 [*sic*].

15

41.     In sum, Rule 42(b)(iii)(B) does not support certification.

42.     Finally, Defendants invoke Rule 42(b)(iii)(H).  This factor considers whether certifying the Order would serve the public interest.  It would not.

43.     Defendants insist that interlocutory review would serve the public interest because the Order "deprives [them] of their right[]" to bring counterclaims.[63] But, as the Order recounted, Defendants filed their original counterclaims before issuing the June Subpoenas.  Then they opposed Plaintiffs' Rule 12(b)(6) motion instead of waiting for the October Records to be produced.  Even when they were, Betts did not mention them before or during the November 2021 hearing.  Nor did Betts cite them in his February 2022 reargument motion.  And Defendants did not claim that the October Records contained "new evidence" at any time prior to filing the Motion in July 2022.

44.     Litigation choices have consequences.  By taking the steps they did, Defendants ran the risk that their counterclaims would be dismissed with prejudice. Defendants' strategies, not the Order, caused any "injustice" alleged here.

45.     After considering all the Rule 42 factors, I may deny the Application if, based on my "own assessment of the most efficient and just schedule to resolve the case," I find that interlocutory review would not be in interests of justice.[64]

---

[63] *Id.* ¶ 47.

[64] Supr. Ct. R. 42(b)(iii).

46.     Based on my own assessment of the most efficient and just route to resolution of this case, I find that interlocutory appeal would not be in the interests of justice.  Given Defendants' conduct throughout this litigation—including in the Application itself—their bid for interlocutory review is best understood as a "dilatory tactic, devoid of merit, that already has wasted trial court resources, would waste appellate resources . . . and would open the door to piecemeal appeals that would undermine the normal process of litigation."[65]  Accordingly, and for all the foregoing reasons, I DENY the Application.

IT IS SO ORDERED.

_/s/ Nathan A. Cook_
Vice Chancellor Nathan A. Cook
Dated: November 18, 2022

---

[65] *Deutsche Bank AG v. Devon Park Bioventures, L.P.*, 2019 WL 3227633, at *3 (Del. Ch. July 15, 2019), *appeal refused*, 214 A.3d 449 (Del. 2019) (TABLE).